Weygandt, C. J.
This controversy involves the provisions of Section 1815 et seq., General Code (Section 5121.01 et seq., Revised Code), relating to the commitment of mentally ill residents to state institutions.
The controlling provisions of Section 1815-9, General Code (Section 5121.06, Revised Code), read as follows:
“It is the intent of this act that a husband may be held liable for the support of a wife while an inmate of any of said institutions, a wife for a husband, a father or mother for a son or daughter, and a son or daughter, or both, for a father or mother.”
The defendants contend that the terms “son or daughter” are by implication restricted to minor sons *434 and daughters. The plaintiff insists that no such restriction is warranted by the unambiguous wording of the statute.
The defendants rely on the provisions of several other statutes relating to the obligation of a parent to support minor children. Chief among these statutes was Section 8002-3, General Code (Section 3103.03, Revised Code), which read in part:
“The husband must support himself, his wife, and his minor children out of his property or by his labor. If he is unable to do so, the wife must assist him so far as she is able. * * * ’ ’
It is the view of the defendants that these general statutes define the policy of the state and that Section 1815-9, General Code (Section 5121.06, Revised Code), supra, must be construed in harmony therewith.
One difficulty with this theory is that, as already observed, the statutes on which the defendants rely are merely general provisions relating generally to the obligation of parents to support their children, while the statute here involved is specific and relates to a particular phase of parental liability.
Another difficulty with the defendants’ view is that the terms of the statutes are different. Clearly the general statutes impose liability for the support of “minor children” only. But the statute relating to the subject of mental illness employs the very different terms “son or daughter.” The word “minor” does not appear. Shall this limitation be read into the special statute?
In the second paragraph of the syllabus in the case of Slingluff v. Weaver, 66 Ohio St., 621, 64 N. E., 574, this court held:
“2. But the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law-making *435 body, there is no occasion to resort to other means of interpretation. The question is not what did the General Assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction. ’ ’
Applying this familiar principle of law, this court is of the opinion that it is not permitted to read words into or out of the statute but must accept the enactment of the General Assembly as it stands. If this is not done, this statute serves no useful purpose inasmuch as the existing general statutes already impose liability for the support of minor children. This court is not permitted to assume that the General Assembly had no purpose in enacting the new and differently worded statute. Since the General Assembly has employed the terms “a son or daughter” without limitation, it is not within the province of this court to hold that the provisions apply to only some sons or some daughters — minors—who have been committed to such institutions. Furthermore, while the word “children” is employed frequently to indicate only persons of immature years, the terms “son” and “daughter” are not used in this narrow connotation.
Hence, the judgments of the lower courts must be reversed and final judgments rendered in the agreed amounts named in the stipulations of fact.

Judgments reversed.

Taft, Hart, Zimmerman and Stewart, JJ., concur.
Lamneck, J., not participating.